Chief Justice Marshall
delivered the opinion of the Court.
This petition seeks to recover dower as the right of Mrs. Heed, in an improved lot in the town of New Liberty, of which the plaintiffs state that O’Neal, the former husband of Mrs. Heed, was seized during the coverture. They exhibit two deeds to him from Noel, &c., dated in 1840 and in 1846; the last being a mere confirmation of the first, and allege that O’Neal sold the lot to John T. Brown, who sold to P. and E. H. Green, under whom the defendants hold it in possession. The defense as set out in the answer is, that O’Neal purchased, by executory contract, from Noel, and afterwards in January, 1838, sold, by executory contract, to Brown, who after-wards in August, 1838, sold in the same way to P. ■andE. H. Green, who built on it a large brick house; that one of the notes of the Greens for the purchase money being in the hands of one Lindsey, as assignee, he brought suit to subject the lot to its payment; that during the progress of that suit, and in order to effectuate its objects, the legal title was, in 1840, conveyed by Noel, &c., to O’Neal, who held their bond for it; and that a sale was decreed, and actually took place from the purchasers, at which the defendant derived title. The bond from O’Neal to Brown, and from him to the Greens, and the decretal sale *117 are referred to as on file in the suit above named; and an order was made that the clerk should transfer them to this case. A bond purporting to be from Brown to the Greens, bearing date in August, 1838, and the decree of sale in the case of Lindsey against the Greens are in the record, but the clerk certifies that the bond from O’Neil to Brown is not among the papers. It is proved, however, that there was among the papers of the suit of Lindsey against the Greens, a paper purporting to be such a bond, and which among all the parties to that suit was received as genuine, but which cannot now be found. But in addition to the statement of the petition, that there was a sale from O’Neal to Brown, and from Brown to the Greens, the deeds exhibited by the plaintiffs furnish evidence that the premises conveyed, were, in 1840, in the occupation of the Greens; and although the defendants have not made out their case very clearly by proof, we think it may be fairly assumed upon the pleadings and exhibits that O’Neal had sold to Brown before the date of Brown’s bond to the Greens, and before O’Neal obtained the first deed from Noel, in 1840. Having then no legal title, he of course sold but an equity to Brown, and as may be presumed, sold by executory contract, and gave his own bond for title, there being no suggestion that he assigned the bond on Noel. His acceptance of the deed of 1840, authorizes the inference that he had not the legal title before the date of that deed; and we assume that having only a title bond, or equity to the lot, he sold it to Brown, who sold it to the Greens before O’Neal acquired the legal title.
The widow of a husband who holds a title bond to land, but who disposes of it during the coverture, is not entitled to dower in the land though the husband may receive a conveyance of the legal title after he has parted with the title bond— he held the legal title in trust for his assignee.
*117 It follows that when O’Neal acquired the legal title, whether by the deed of 1840, or by that of 1846, he held it in trust, either for his own vendee, Brown, or for the Greens, who were in possession as the vendees of Brown. In either case he had not, by virtue of the legal title then acquired, any such beneficial interest or seizin, as entitled his widow to dower on his subsequent death. He held the title merely as *118 trustee, and for the purpose of conveying it to another who was entitled to it by contract with him, and to whom he was bound to convey. The wife of a trustee is not entitled to dower in the estate held by her husband in trust for others; and the claim of dower rests in this case solely upon the question, whether as her husband had an equity in the land by title bond, during the coverture, but with which he had parted before his death by selling the land to another, his widow was entitled to be endowed of, or in that equity, notwithstanding its transfer by her husband. This question has been elaborately argued on the part of the counsel.for the plaintiffs, whose claim was denied by the Circuit Court, and our attention has been called particularly to the cases of Baily and wife vs. Duncan's heirs, 4 Mon., 256, and of Hamilton vs. Hughes, 6 J. J. Mar., 581. The former is referred to as giving, upon solid reasons, a construction to the fourteenth section of the act of 1796, for regulating conveyances, (Stat. Law, 444,) which attaches the potential right of dower upon the equitable title of the husband, evidenced by a bond held during the coverture, for conveyance of the legal title, and that having once attached, it can only be divested in the mode pointed out for the relinquishment of dower in other cases, and cannot be defeated by the mere act of the husband; and it is said that the case of Hamilton vs. Hughes, which denies the right of dower where the husband has transferred his equitable claim upon the legal title, presents no satisfactory reason for the limitation which it places on the right.
It is to be observed, however, that in the first of these cases, the precise question stated and decided by the court was, whether the wife was entitled to be endowed of land to which the husband had the equitable title by bond at the time of his death; and, although, in deciding this question, the court construes the fourteenth section as embracing not only cases in which the trust for the husband is evidenced *119 by the deed vesting the legal title, but those also, in which the husbandholdsabond,whichinequitymakes the holder of the title a trustee for him, and thus brings the case within the words of the statute, giving dower in lands of which another is seized during the coverture for the use of the husband, this construction, by which the statute is made to embrace trusts, resulting from executory contracts, is rather assumed than demonstrated, and it would not be very easy to reconcile the construction by which such trusts are included in the fourteenth section, with that which excludes them from the thirteenth section, subjecting estates held in trust to the like debts and charges of the person for whose benefit they are holden, as if he owned the like interest in the thing itself, which he owns in the uses or trusts thereof. Yet the interest held by title bond only has been uniformly decided not to be subject to execution.
In the case of Hamilton vs. Hughes, the court evidently disapproves of the broad construction which had been given to the statute in the previous case referred to. But deferring to the authority of that ease upon the precise question presented by the record, and decided by the court, that is, upon the right of the wife in case the husband dies without having divested himself of his equity, the court in Hamilton vs. Hughes, goes on to show the inconvenience and evil consequences of attaching the right of dower inseparably to a title by executory contract, evidenced by a private paper not required to be recorded, and which, under the statute of assignments, papers from hand to hand by indorsement and delivery, or may be transferred by another writing, and upon which, when it comes to the hands of the last holder, there may be two or ten claims of dower to. which his interest is subject. And it is intimated, as a further illustration, that these bonds being assignable by the statute, it could not have been intended that in order to perfect the right of the as *120 signee, there should be a formal deed from the assignor and his wife, regularly acknowledged, authenticated, and recorded, as in conveyances of the legal title. Such a requisition would certainly change materially the course of dealing in title bonds.
It may be, that an adherence to both of these decisions may produce anomaly in the law of dower as applicable to equitable interests in land, evidenced by executory contracts. But we think the reasons given in the case of Hamilton vs. Hughes, against admitting the right of dower as attaching, permanently to such equities whenever acquired during coverture, so as only to be divested, by deed and formal relinquishments, are of great moment; and the decisions, upon both points, that is in favor of the right of dower, if the husband be entitled to the equity at the time of his death, and against it if he has previously sold and transferred it, or divested himself of it, (in good faith,) having been followed, and having become a rule of property, we do not feel at liberty to depart from either. If there be an error in either, or if either be contrary to justice or good policy, which the court does not perceive, the legislative department can easily apply the corrective. It has been said that the case of Hamilton vs. Hughes stands alone. But even if there were no other reported case maintaining the same principle, this, instead of showing that it was unsatisfactory, and had been repudiated, would, in the absence of any case overruling it, rather show that the rule established by it had been followed without question. We find, however, that in the case of Lawson vs. Morton, 6 Dana, 472, the principle is recognized and approved, that though the wife may be endowed in a trust or equitable interest held by her husband at his death, yet if he has parted with his beneficial interest prior to his death, the fourteenth section of the act referred to should not be so construed as to entitle her to dower therein; and we are satisfied that such has since been uniformly regarded as the law by this court.
*121 Wherefore, the judgment dismissing the petition is affirmed.